**NO. 25-11291**

---

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

**DWIGHT GANN, AS TRUSTEE OF BR REAL ESTATE HOLDINGS TRUST, AND SAGE MANAGEMENT L.L.C.,**

Plaintiff-Appellant

V.

**DEPOSITORS INSURANCE COMPANY,**

Defendant-Appellee

---

**Appeal from the United States District Court**
**for the Northern District of Texas, Dallas Division**
**Case No. 3:24-cv-02168-S**
**Honorable Karen Gren Scholer, District Judge**

---

# BRIEF OF APPELLANTS, GANN PLAINTIFFS[1]

---

[1] DWIGHT GANN, AS TRUSTEE OF BR REAL ESTATE HOLDINGS TRUST, AND SAGE MANAGEMENT LLC

Andrew A. Woellner
Texas Bar No. 24060850
**Woellner Law Group, PLLC**
1717 W. 34th, Suite 600-186
Houston, Texas 77018
Telephone: (832) 982-0100
Facsimile: (832) 363-6333
Email: andrew@woellnerlaw.com

*Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellants:** - Dwight Gann, as Trustee of BR Real Estate Holdings Trust - Sage Management LLC - BR Real Estate Holdings Trust

**Defendant-Appellee:** - Depositors Insurance Company

**Trial Court:** - Honorable Karen Gren Scholer, United States District Judge

**Counsel for Plaintiffs-Appellants:** - Andrew A. Woellner, Woellner Law Group, PLLC

**Counsel for Defendant-Appellee:** - Patrick M. Kemp, Segal McCambridge Singer and Mahoney - Robert G. Wall, Segal McCambridge Singer and Mahoney

**Experts and Consultants:** - Gary Treider, Chaparral Consulting (Plaintiffs' expert) - Gary Pennington (Plaintiffs' expert) - Blackstone Claim Services, Inc. (Plaintiffs' public adjuster) - Leif Lindblom, P.E., ProNet Group Inc. (Defendant's engineer) - Armando Selva, P.E., ProNet Group Inc. (Defendant's engineer) - David G. Teasdale, P.E. (Defendant's expert)

**Respectfully submitted,**

*/s/ Andrew A. Woellner*
Andrew A. Woellner

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fifth Circuit Rule 28.2.3, Appellants respectfully request oral argument. This appeal involves significant issues regarding insurance coverage, the application of prompt notice requirements, prejudice standards, and the district court's failure to consider that this issue was tried by consent of the parties. Oral argument would assist the Court in resolving these important questions of Texas insurance law and ensuring justice for an 88-year-old property owner who promptly reported damage upon discovery and whose claim was extensively investigated and adjusted by the insurer for over a year before coverage was denied on grounds never previously asserted.

# TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS ........................................................3
STATEMENT REGARDING ORAL ARGUMENT .............................................4
TABLE OF CONTENTS........................................................................................5
TABLE OF AUTHORITIES ..................................................................................7
JURISDICTIONAL STATEMENT ...................................................................8
ISSUES PRESENTED..............................................................................................9
I. Whether the District Court erred in finding that no claim was made under the 2018 Policy when: .........................................................................................9
II. Whether the District Court erred in finding Appellants failed to provide prompt notice and that Appellee was prejudiced as a matter of law when: ......9
III. Whether the District Court erred in dismissing Appellants' extra-contractual claims for bad faith and violations of the Texas Insurance Code when genuine disputes of material fact exist, including: ...............................10
STATEMENT OF THE CASE..............................................................................11
I. Nature of the Case...........................................................................................11
II. Course of Proceedings....................................................................................12
III. Disposition in the District Court ...................................................................13
STATEMENT OF FACTS ....................................................................................14
I. The Property and Insurance Policies ...............................................................14
II. The June 5, 2018 Hailstorm............................................................................15
III. Discovery and Reporting of the Claim ..........................................................15
IV. Depositors' Investigation and Claim Handling .............................................16
A. Initial Investigation (September 2022) ..........................................................16
B. Public Adjuster and Second Investigation (February-August 2023)....17
V. Treider's Report and Identification of the June 2018 Loss Date ................18
VI. Depositors' Denial and This Litigation ........................................................19
A. Depositors' Coverage Decisions.....................................................................19
B. Litigation .........................................................................................................21
SUMMARY OF THE ARGUMENT .....................................................................22
ARGUMENT ..........................................................................................................25

Standard of Review ....................25
I. THE DISTRICT COURT ERRED IN FINDING NO CLAIM WAS MADE UNDER THE 2018 POLICY ....................26
A. Appellants' Lawsuit Was Always Predicated on the June 2018 Storm ....................26
B. The Parties Litigated This Matter as a Breach of the 2018 Policy by Express and Implied Consent ....................27
C. Treider's Report Provided Comprehensive Notice of the June 5, 2018 Loss ....................29
D. Depositors Acknowledged, Investigated, and Issued Multiple Coverage Decisions Regarding the June 2018 Loss Under the 2018 Policy....................31
II. THE DISTRICT COURT ERRED IN FINDING APPELLANTS FAILED TO PROVIDE PROMPT NOTICE AND THAT DEPOSITORS WAS PREJUDICED ....................32
A. Appellants Provided a Reasonable Excuse for the Delay: An 88-Year-Old Property Owner Unable to Access the Roof....................33
B. Depositors Failed to Establish Actual Prejudice as a Matter of Law ....................35
C. Depositors Waived Any Prejudice Defense by Failing to Plead It as an Affirmative Defense ....................41
D. Depositors Waived Any Prejudice Defense by Never Asserting It During Claim Handling ....................43
Summary on Prompt Notice and Prejudice ....................44
III. THE DISTRICT COURT ERRED IN DISMISSING APPELLANTS' EXTRA-CONTRACTUAL CLAIMS ....................44
A. Genuine Disputes of Material Fact Exist as to Depositors' Bad Faith ....................45
B. Depositors' Engineers Failed to Address Critical Evidence....................46
C. Appellants Alleged an Independent Injury ....................47
CONCLUSION ....................48
CERTIFICATE OF SERVICE ....................49
CERTIFICATE OF COMPLIANCE....................50

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)....................................25
*Camacho v. Allstate Tex. Lloyds,* No. 7:14-CV-581, 2015 U.S. Dist. LEXIS 181362, at *6 (S.D. Tex. 2015) ...........................................................................35
*Century Sur. Co. v. Hardscape Constr. Specialties, Inc.*, 578 F.3d 262, 265 (5th Cir. 2009)...........................................................................................................30
*H5R, LLC v. Scottsdale Ins. Co.*, No. 3:23-cv-1197-K-BN, 2025 U.S. Dist. LEXIS 56377, at *18 (N.D. Tex. 2025)..........................................................................36
*Hamilton Props. v. Am. Ins. Co.*, 643 F. App'x 437, 440 (5th Cir. 2016)........ 35, 41
*Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997) .........................................................................................................................45
*Ridglea Est. Condo. Ass'n v. Lexington Ins. Co.*, 415 F.3d 474, 479 (5th Cir. 2005)(rev'd on other grounds)................................................................ 32, 34
*RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)..............................25
*Sadovsky v. Nationwide Prop. & Cas. Ins. Co.*, No. SA-18-CV-271-XR, 2019 WL 2165805, at *3 (W.D. Tex. May 15, 2019) ..........................................................33
*Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004)............................24
*Vernon v. State Farm Lloyds, No. 3:23-cv-02142-E; 2025 U.S. Dist. LEXIS 258765 (October 29, 2025)* .................................................................................................47
*Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).............................. 41, 42

## Statutes

28 U.S.C. § 1291 .........................................................................................................8
28 U.S.C. § 1332 .........................................................................................................7
Chapter 541 of the Texas Insurance Code .............................................................13
Chapter 542 of the Texas Insurance Code .............................................................13

## Rules

Fed. R. Civ. P. 56(a)..................................................................................................25
Federal Rule of Civil Procedure 15(b)(2) ........................................... 23, 26, 27, 28
Federal Rule of Civil Procedure 59(e) ....................................................................12
Federal Rule of Civil Procedure 8(c) ......................................................................41

## JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of Texas had jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332. Plaintiffs-Appellants are citizens of Texas, and Defendant-Appellee Depositors Insurance Company is a Massachusetts corporation with its principal place of business in Massachusetts. The amount in controversy exceeds $75,000, exclusive of interest and costs.

The District Court entered a Memorandum Opinion and Order granting Defendant's Motion for Summary Judgment and dismissing all of Plaintiffs' claims with prejudice on August 28, 2025. (ROA. 2150.). **Plaintiffs timely filed a Motion to Alter or Amend the Judgment pursuant to Federal Rule of Civil Procedure 59(e) on September 25, 2025. (ROA. 2182).** The District Court denied the Rule 59(e) Motion on November 7, 2025. (ROA. 2207).

Plaintiffs filed their Notice of Appeal on November 21, 2025, within 30 days of the November 7, 2025 Order denying the Rule 59(e) Motion. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

**I. Whether the District Court erred in finding that no claim was made under the 2018 Policy when:**

A. Appellants' Original Petition alleged only a June 2018 storm as the cause of damage;

B. Appellants provided Treider's comprehensive report on October 11, 2023, identifying June 5, 2018, as the loss date, which Appellee acknowledged and extensively investigated;

C. Appellee attached the 2018 Policy to its summary judgment motion and argued extensively about coverage under that policy; and

D. The parties litigated breach of the 2018 Policy by express and implied consent pursuant to Federal Rule of Civil Procedure 15(b)(2).

**II. Whether the District Court erred in finding Appellants failed to provide prompt notice and that Appellee was prejudiced as a matter of law when:**

A. Appellants provided a reasonable excuse for the delay—an 88-year-old property owner who could not access the roof and reported the claim promptly upon discovering interior damage;

B. Appellee never established that any alleged "intervening storm" actually struck the Property;

C. Two of the four alleged "intervening storms" occurred after Appellants had already reported the claim and Appellee had begun its investigation;

D. The alleged intervening storms ranged from 1.25 to 5 miles from the Property with no evidence linking them to any damage at the Property;

E. The alleged intervening storms produced only 1-inch hail, while Appellants' expert determined the damage was caused by 2.5-inch hail consistent only with the June 5, 2018 storm;

F. Appellee waived any prejudice defense by failing to plead it as an affirmative defense in either its Original or Amended Answer; and

G. Appellee waived any prejudice defense by never asserting it during the 22-month claim handling process, never issuing a reservation of rights letter asserting late notice or prejudice, and raising the defense for the first time only in its summary judgment motion.

**III. Whether the District Court erred in dismissing Appellants' extra-contractual claims for bad faith and violations of the Texas Insurance Code when genuine disputes of material fact exist, including:**

A. Whether Appellee adequately investigated the claim when its engineers never addressed the critical photographic evidence showing crushed asphalt under the gravel ballast on the built-up roof;

B. Whether Appellee acted in bad faith by denying coverage on grounds never previously asserted during the claim handling; and

C. Whether Appellants alleged an independent injury—further property damage resulting from the delay in proper repairs.

## STATEMENT OF THE CASE

### I. Nature of the Case

This is an insurance coverage dispute arising from hail damage to a commercial property. Appellants Dwight Gann, as Trustee of BR Real Estate Holdings Trust, and Sage Management LLC (collectively "Appellants" or "Gann") sought coverage under a commercial property insurance policy issued by Appellee Depositors Insurance Company ("Depositors") for damage to the Property's three roof sections caused by a June 5, 2018 hailstorm.

After an 88-year-old property owner discovered interior water damage and reported a claim in September 2022, Depositors investigated the claim, conducted multiple inspections, paid initial benefits, and continued investigating for over a year. In October 2023, Appellants' expert Gary Treider provided a comprehensive report identifying June 5, 2018, as the date of the hailstorm that caused the damage, based on his analysis of weather data, hail characteristics, and physical evidence at the Property.

Rather than acknowledge this was a claim under the 2018 Policy that Depositors had been investigating, Depositors denied coverage, claiming: (1) the June 2018 loss fell outside the 2022 Policy period under which the claim was initially opened, and (2) alternatively, if this was a claim under the 2018 Policy, notice was not prompt and Depositors was prejudiced.

Appellants brought this action for breach of contract, violations of the Texas Insurance Code, and breach of the duty of good faith and fair dealing.

## II. Course of Proceedings

On June 27, 2024, Appellants filed their Original Petition in state court, alleging breach of the insurance policy for failure to pay for damage caused by a June 2018 hailstorm. (ROA. 17).

Depositors removed the case to federal court on the basis of diversity jurisdiction. (ROA. 10).

On May 28, 2025, Depositors filed its Motion for Summary Judgment. (ROA. 530). **On June 18, 2025, Appellants filed their Response. (ROA. 1707**).

On August 28, 2025, the District Court granted Depositors' Motion for Summary Judgment and dismissed all of Appellants' claims with prejudice. (ROA. 2150).

On September 25, 2025, Appellants filed a Motion to Alter or Amend the Judgment pursuant to Federal Rule of Civil Procedure 59(e). (ROA. 2182).

On November 7, 2025, the District Court denied Appellants' Rule 59(e) Motion. (ROA. 2207).

Appellants timely filed their Notice of Appeal on November 21, 2025 (ROA. 2209).

## III. Disposition in the District Court

The District Court granted summary judgment in favor of Depositors on all claims, holding:

1. Appellants' breach of contract claim based on the 2022 Policy failed because any damages from the June 2018 Storm fell outside the 2022 Policy's coverage period. (ROA. 2157-2158).

2. To the extent Appellants pursued a claim for breach of the 2018 Policy, such a claim failed because:

   – Appellants never alleged a breach of the 2018 Policy in their Petition; (ROA. 2156).
   – There was no evidence of an insurance claim made under the 2018 Policy; (ROA. 2157) and
   – Even assuming a claim was made under the 2018 Policy, the years-long delay in notice was not prompt as a matter of law and prejudiced Depositors. (ROA. 2161-2163).

3. Appellants' claims for violations of Chapter 541 of the Texas Insurance Code and breach of the duty of good faith and fair dealing failed because Appellants did not establish a breach of contract claim and did not provide evidence of an independent injury. (ROA. 2163-2165).

4. Appellants' claim for violation of Chapter 542 of the Texas Insurance Code failed because Depositors was not liable for the breach of any insurance policy, an essential element of a Chapter 542 claim. (ROA. 2165-2166).

The District Court denied Appellants' Rule 59(e) Motion, stating that the Motion "only rehashes arguments and evidence that the Court already weighed, considered, and addressed, or that 'could have been offered or raised before the entry of judgment.'" (ROA. 2208).

## STATEMENT OF FACTS

### I. The Property and Insurance Policies

Appellants owned a commercial property located at 2720 N. Belt Line Road, Irving, Texas 75062-5216 (the "Property"). (ROA. 18). **The Property contains one building with three sections of roof: two sections covered with spray-foam membrane and one section covered with a built-up roof membrane with gravel ballast. (*Id.*).**

Depositors insured the Property under two successive commercial property insurance policies:

- **2018 Policy**: Policy No. ACP CPPD 3027560444, effective January 29, 2018, to January 29, 2019. (ROA. 549).
- **2022 Policy**: Policy No. ACP CPPD 3067560444, effective January 29, 2022, to January 29, 2023. (ROA. 547).

Both policies required the insured to "give [Depositors] prompt notice of the loss or damage" as a condition precedent to coverage. (ROA. 625 and 1042).

## II. The June 5, 2018 Hailstorm

On June 5, 2018, a severe hailstorm struck the Property, producing 2.5-inch hail that damaged all three roof sections. (ROA. 1733)**. The storm was significant and well-documented in meteorological databases. (ROA. 1730-1731).**

The hail impacts caused distinctive damage patterns on the Property's roofs, including:

- **Spray-foam roofs**: Numerous impact marks and indentations consistent with large hail. (ROA. 1732).
- **Built-up gravel roof**: Most critically, physical evidence showing the asphalt membrane beneath the gravel ballast had been crushed by hail impacts. (ROA. 1734.). **Appellants' expert Gary Treider documented this damage with magnified photographs showing crushed asphalt under the gravel. (ROA. 1790**).

## III. Discovery and Reporting of the Claim

Appellant Dwight Gann is 88 years old and unable to access the Property's roof to inspect for damage. (ROA. 1726)**. In 2022, Mr. Gann noticed interior water damage at the Property, indicating that the roof had been compromised. (*Id.***).

On September 7, 2022—promptly upon discovering the interior damage—Mr. Gann reported a claim for hail damage to the Property's roof to Depositors. (*Id.*). **At the time of reporting, Mr. Gann "did not know exactly when the damage occurred" because he could not access the roof and had not observed the**

**exterior damage. (*Id.*)**. It was [Depositors] that provided a date [of August 9, 2022] for the damage. (*Id.*).

The claim was assigned claim number 725068-GN (the "Claim") and was opened under the 2022 Policy. (ROA. 547).

**IV. Depositors' Investigation and Claim Handling**

**A. Initial Investigation (September 2022)**

Depositors promptly had the Property inspected by a third-party company, Seek Now, on September 16, 2022. (ROA. 547). Seek Now found:

- Damage to metal roof accessories (*Id.*);
- No damage to the built-up gravel roof section (a finding later contradicted by more thorough investigation) (*Id.*); and
- Damage to the spray-foam roof sections with "unknown" cause. (*Id.*).

Based on this initial inspection, Depositors determined the "unknown" damage was hail-related and issued a repair estimate totaling $58,010.08 on a replacement cost basis. (*Id.*). **Depositors issued payment on September 29, 2022, for the actual cash value of the repair estimate less the applicable wind/hail deductible. (ROA. 548**).

Significantly, **no storm on or near August 9, 2022, produced hail**. Depositors' own engineers never found any evidence of a storm on that date. The date was assigned by Depositors without any meteorological support.

**B. Public Adjuster and Second Investigation (February-August 2023)**

On or about February 28, 2023, Appellants retained public adjuster Blackstone Claim Services, which provided a competing estimate totaling $242,041.39 for full replacement of all three roof sections. (ROA. 548). **At this point in the claim handling, Blackstone continued to reference the August 9, 2022, date of loss that Depositors had assigned. (ROA. 1899)**.

Depositors retained the engineering firm ProNet Group Inc., whose engineer Leif Lindblom, P.E., authored a report after inspecting the Property on June 14, 2023. (ROA. 548). Lindblom's report noted:

- The closest hail event to the Property between 2018 and the reported date of loss was an April 19, 2020 storm (located **3.4 miles away**). (ROA. 793).
- More recent storms occurred on March 16, 2023 (located **1.25 miles away**), and April 21, 2023 (located **1.5 miles away**)—both occurring **after the claim had been reported and was being investigated by all parties**. (ROA. 793.).

Based on Lindblom's report, Depositors revised its estimate to include additional spray-foam recoating and other repairs, increasing to a total of $80,506.51 on a replacement cost basis. (ROA. 548). **Depositors issued a supplemental payment on August 7, 2023. (*Id.*).**

**Critically, during this entire period (September 2022 through August 2023), Depositors never:**

- Claimed that notice was not prompt;
- Asserted it was prejudiced by any delay;
- Issued a reservation of rights letter regarding late notice or prejudice; or

- Suggested the claim should be handled under a different policy.

Instead, Depositors continued investigating, issuing payments, and adjusting the claim under the claim number it had assigned.

**V. Treider's Report and Identification of the June 2018 Loss Date**

On October 7, 2022—just one month after the claim was reported—Appellants retained roof consultant Gary Treider of Chaparral Consulting to inspect the Property and determine the cause and extent of damage. (ROA. 223, 8:6-16).

Treider conducted a comprehensive investigation, including:

1. **Physical inspection of all three roof sections**, documenting the type, pattern, and characteristics of damage. (ROA 1712-1713).
2. **Meteorological analysis** of two independent weather databases (CoreLogic and NOAA) covering a five-year period to identify all hail events within five miles of the Property. (ROA 1731 and 1816).
3. **Forensic analysis** comparing the observed damage characteristics (hail size, impact patterns, directional evidence) with the characteristics of each potential storm. (ROA. 1712, 1870, 57:12-20, 1871, 59:4-60:17, 1880, 97:1-18, 1882, 102:20-22 and 103:3-18).
4. **Physical sampling** of the built-up gravel roof, with magnified photography showing the asphalt membrane beneath the gravel ballast had been crushed by large hail impacts. (ROA. 1895).

Based on this comprehensive analysis, Treider determined that **only one storm had the characteristics matching the damage observed at the Property: the June 5, 2018 hailstorm, which produced 2.5-inch hail**. (ROA. 1711-1714).

Treider's analysis specifically excluded other potential storms because:

- They produced smaller hail (typically 1 inch or less) (ROA. 1713);

- They did not produce the directional impact patterns observed at the Property (ROA 1892);
- They did not produce the distinctive jagged impact characteristics observed in the damage (ROA 1902); and
- The cumulative nature and severity of the damage could only have been caused by the intense June 5, 2018 storm. (ROA. 1906).

In his deposition, Treider testified:

> **Q:** It's your opinion that all the damage that you observed at the property was from the June 2018 storm and no other storm, correct?
>
> **A:** It's likely that small hail could have occurred at this property, and it depends upon how you define "damage." There could have been other small hail, but not that mattered. The huge hail on June 5, 2018, made the roof nonfunctioning and to cause it to be replaced. Any other so-called damage that pea-sized hail may have done would not be – be negligible. It wouldn't be anything for consideration. (ROA. 1885, 115:10-22).

**Treider completed his report and transmitted it to Depositors via Blackstone on October 11, 2023**—approximately 13 months after he had inspected the Property and identified the June 2018 loss date. (ROA. 549). The report provided comprehensive notice to Depositors that the damage was caused by the June 5, 2018 hailstorm and fell under the 2018 Policy. (*Id.*; *see also*, ROA. 1193).

## VI. Depositors' Denial and This Litigation

### A. Depositors' Coverage Decisions

After receiving Treider's report identifying the June 2018 loss date, Depositors did not dispute that a June 5, 2018 hailstorm had occurred or that it had damaged properties in the area. Instead, Depositors:

1. **Retained another engineer** (Lindblom) to prepare a supplemental report responding to Treider's findings. (ROA. 549). **Lindblom's supplemental report concluded that Treider's methodology was flawed but did not**

**identify any other storm as the cause of the damage observed by Treider in 2022. (ROA. 864-875).**

2. **Issued a coverage decision letter on February 26, 2024**, stating:

   "[T]he newly-claimed June 5, 2018 loss date occurred outside of the effective policy period (January 29, 2022 to January 29, 2023) associated with the reported date of loss for this claim, August 9, 2022…. No additional payment is owed associated with this claim and the reported date of loss August 9, 2022." (ROA. 549-550 and ROA. 877).

   Notably, this letter **did not claim that notice was untimely or that Depositors was prejudiced**. It simply stated the June 2018 loss fell outside the 2022 Policy period. And it should have known that a claim was being presented under the 2018 Policy, which was also with Depositors.

3. **Conducted a third inspection** by another engineer, Armando Selva, P.E., in June 2024 after Appellants' counsel sent a demand letter. (ROA. 550). **Selva's report again did not identify the damage as having been caused by any storm other than the June 2018 event. (ROA. 550 and ROA. 887-888).**

4. **Issued a final coverage decision on June 18, 2024**, again denying coverage on the ground that the June 2018 loss fell outside the 2022 Policy period. (ROA. 1009-1010).

**At no point during the 22-month claim handling process did Depositors:**

- Claim that the June 2018 loss constituted a separate claim that should have been reported under the 2018 Policy;
- Assert that notice of the June 2018 loss was not prompt;
- Assert that it was prejudiced by the timing of when Treider's report was provided;
- Issue a reservation of rights letter regarding late notice, lack of prompt reporting, or prejudice; or
- Suggest that coverage under the 2018 Policy was being denied for any reason related to notice or prejudice.

**B. Litigation**

Appellants filed suit alleging breach of contract, violations of the Texas Insurance Code, and breach of the duty of good faith and fair dealing. Appellants' Original Petition identified the loss date as "June 2018" and alleged that Depositors had failed to pay for damage caused by a June 2018 hailstorm. (ROA. 17-29).

Depositors filed a Motion for Summary Judgment arguing:

1. **Appellants' breach of contract claim based on the 2022 Policy failed** because the June 2018 Storm occurred outside the 2022 Policy's coverage period. (ROA. 537).
2. **Alternatively, to the extent Appellants brought a claim for breach of the 2018 Policy**, such a claim failed because:
   - Appellants never alleged a breach of the 2018 Policy in their Petition (ROA. 553-554);
   - There was no evidence of an insurance claim made under the 2018 Policy (*Id.*); and
   - Even assuming a claim was made, Appellants failed to provide prompt notice and Depositors was prejudiced. (ROA. 554-560).

**Significantly, this was the first time Depositors had ever asserted:**

- That a claim should have been made under the 2018 Policy;
- That notice was not prompt;
- That Depositors was prejudiced; or
- That these issues were defenses to coverage.

Depositors **attached the 2018 Policy to its summary judgment motion** and argued extensively about coverage under that policy, citing policy provisions, discussing the policy's prompt notice requirement, and analyzing whether

Depositors' obligations under the 2018 Policy had been discharged. (*Id*. and ROA. 585).

The District Court granted summary judgment, holding that Appellants' breach of contract claim failed for three independent reasons:

1. Appellants never alleged a breach of the 2018 Policy in their Petition (ROA. 2156);
2. There was no evidence of a claim made under the 2018 Policy (ROA. 2157); and
3. Even assuming a claim was made, Appellants failed to provide prompt notice and Depositors was prejudiced as a matter of law. (ROA. 2161-2163).

The District Court also dismissed Appellants' extra-contractual claims, finding they failed because Appellants did not establish a breach of contract and did not provide evidence of an independent injury. (ROA. 2163-2166).

Appellants filed a timely Motion to Alter or Amend the Judgment under Rule 59(e), which the District Court denied, stating the Motion "only rehashes arguments and evidence that the Court already weighed, considered, and addressed." (ROA. 2207-2208).

This appeal followed.

## SUMMARY OF THE ARGUMENT

The District Court committed multiple reversible errors in granting summary judgment for Depositors and dismissing all of Appellants' claims.

**First**, the District Court erred in finding that no claim was made under the 2018 Policy. Appellants' Original Petition alleged only a June 2018 storm as the

cause of damage. Appellants provided Depositors with Treider's comprehensive report on October 11, 2023, identifying June 5, 2018, as the date of the hailstorm that caused the damage. Depositors acknowledged receipt of this report, extensively investigated the June 2018 loss, and issued multiple coverage decisions regarding that loss. Throughout the litigation, Depositors attached the 2018 Policy to its summary judgment motion and argued extensively about coverage under that policy. Under these circumstances, the issue of breach of the 2018 Policy was tried by the express and implied consent of both parties pursuant to Federal Rule of Civil Procedure 15(b)(2), and the District Court should have treated the issue as if it had been raised in the pleadings. Notably, the insured has no power to force the insurer to provide a new claim number or even open a new claim. The fact that the insured presented expert reports about the damage from a 2018 storm is sufficient under the Policy to present, or make, the claim.

**Second**, the District Court erred in finding that Appellants failed to provide prompt notice and that Depositors was prejudiced as a matter of law. Appellants provided a reasonable excuse for the delay: Mr. Gann is 88 years old, unable to access the roof, and promptly reported the claim upon discovering interior water damage. Moreover, Depositors failed to establish actual prejudice. The alleged "intervening storms" cited by Depositors were located 1.25 to 5 miles from the Property, and **two of the four alleged storms occurred after the claim had already**

**been reported and was being investigated by Depositors**. ***Depositors never established that any of these storms actually struck the Property or caused any damage***. The alleged storms produced only 1-inch hail, whereas Appellants' expert determined the damage was caused by 2.5-inch hail consistent only with the June 5, 2018 storm. Furthermore, Depositors waived any prejudice defense by failing to plead it as an affirmative defense in either its Original or Amended Answer and by never asserting prejudice during the 22-month claim handling process.

**Third**, the District Court erred in dismissing Appellants' extra-contractual claims for bad faith and violations of the Texas Insurance Code. Genuine disputes of material fact exist regarding whether Depositors adequately investigated the claim. Depositors' engineers never addressed the critical photographic evidence presented by Treider showing crushed asphalt under the gravel ballast on the built-up roof—evidence that directly contradicted Depositors' initial finding of "no damage" to that roof section. Depositors' failure to address this evidence and its denial of coverage on grounds never previously asserted during claim handling raise fact questions regarding bad faith. Additionally, Appellants alleged an independent injury: further property damage resulting from the delay in making proper repairs. For these reasons, the District Court's judgment should be reversed, and the case should be remanded for trial.

# ARGUMENT

## Standard of Review

This Court reviews a district court's grant of summary judgment de novo, applying the same standard as the district court. *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004). Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the Court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

A fact is material if its resolution could affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

"[C]onclusory statements, speculation, and unsubstantiated assertions" will not suffice to satisfy the non-movant's burden, but the Court must resolve factual controversies in favor of the non-moving party when both parties have submitted evidence of contradictory facts. *RSR Corp.*, 612 F.3d at 857.

## I. THE DISTRICT COURT ERRED IN FINDING NO CLAIM WAS MADE UNDER THE 2018 POLICY

The District Court's first ground for granting summary judgment was its finding that Appellants never made a claim under the 2018 Policy for damage from the June 2018 Storm. This finding was erroneous for four independent reasons.

### A. Appellants' Lawsuit Was Always Predicated on the June 2018 Storm

Appellants' Original Petition unambiguously alleged that the damage to the Property was caused by a storm in June 2018:

> "On or about **June 2018**, the Property was severely damaged by a hailstorm (the 'Storm'). Specifically, the Property sustained storm damage to the Property's roofing systems and cantilevered lighting." (ROA. 18) (emphasis added).

The Petition consistently referred to "**June 2018**" as the date of the Storm throughout. (ROA. 18-19).

Thus, from the outset of this litigation, Appellants alleged that:

- The damage was caused by a June 2018 storm;
- The applicable policy was the 2018 Policy; and
- Depositors breached that policy by failing to pay for the damage.

The District Court's conclusion that "Plaintiffs never alleged a breach of the 2018 Policy in the Petition" (ROA. 2156) is contradicted by the plain language of the Petition itself.

## B. The Parties Litigated This Matter as a Breach of the 2018 Policy by Express and Implied Consent

Even if the Petition were somehow deemed ambiguous regarding which policy Appellants sought to enforce, the parties unquestionably litigated this case as a dispute over coverage under the 2018 Policy for damage from the June 2018 Storm. Under Federal Rule of Civil Procedure 15(b)(2), when an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.

Fed. R. Civ. P. 15(b)(2) provides:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. **A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.** But failure to amend does not affect the result of the trial of that issue.

Here, the parties unquestionably tried the issue of whether Depositors breached the 2018 Policy. The evidence of implied consent is overwhelming:

1. **Plaintiff plead the 2018 Policy was the applicable policy and was breached by Appellee. (ROA. 18-19).**
2. **Depositors attached the 2018 Policy as an exhibit to its Motion for Summary Judgment** and designated it as "Exhibit A-1: Certified Copy of Policy No. ACP CPPD 3027560444 for policy period 1/29/2018 – 1/29/2019." (ROA 545 and 585).
3. **Depositors argued extensively about the 2018 Policy in its briefing**, citing specific provisions of that policy, analyzing whether those provisions had been satisfied, and arguing that Depositors' obligations under the 2018 Policy had been discharged due to Appellants' alleged failure to provide prompt notice. (ROA. 554-560).

4. **Depositors argued that the June 2018 loss fell under the 2018 Policy**, stating in its brief: "A June 5, 2018 date of loss falls under Policy no. ACP CPPD 3027560444 with effective dates January 29, 2018 to January 29, 2019, not under the policy covering the time period originally reported." (ROA. 549).

5. **The District Court analyzed coverage under the 2018 Policy**, holding that "to the extent Plaintiffs bring a claim for the breach of the 2018 Policy," such a claim failed for multiple reasons. (ROA. 2156). The Court's analysis necessarily treated the issue as if it had been pleaded.

6. **Both parties briefed the applicability of the 2018 Policy's prompt notice requirement**, with Depositors arguing that Appellants failed to satisfy this condition precedent and Appellants responding that prompt notice was provided and that Depositors was not prejudiced. (ROA. 554-560 and ROA. 1891-1892).

Under these circumstances, the issue of breach of the 2018 Policy was unquestionably tried by the parties' express and implied consent. The District Court should have deemed the pleadings amended to conform to the evidence pursuant to Rule 15(b)(2).

The question is not whether offering alternative arguments "weighs against" a party; the question is whether the parties tried an issue not raised in the pleadings. They did. Rule 15(b)(2) mandates that such an issue "must be treated in all respects as if raised in the pleadings."

The District Court concluded Depositors did not breach the 2018 Policy based on its finding that no claim was made under that policy. If the pleadings are deemed amended pursuant to Rule 15(b)(2) to allege a breach of the 2018 Policy—as they

must be—then the District Court's first ground for dismissal fails, and its subsequent grounds must be reconsidered in that light.

**C. Treider's Report Provided Comprehensive Notice of the June 5, 2018 Loss**

The 2018 Policy requires the insured to "give [Depositors] prompt notice of the loss or damage." (ROA. 625). The policy does not specify that notice must be denominated as a "new claim" or assigned a particular claim number (two functions not even within the insured's control). The question is whether Depositors received notice of the loss.

On October 11, 2023, Appellants provided Depositors with Gary Treider's comprehensive report identifying June 5, 2018, as the date of the hailstorm that caused the damage to the Property. (ROA. 549). The report provided:

- The specific date of the loss (June 5, 2018) (ROA. 1197);
- A description of the property involved (three roof sections at 2720 N. Belt Line Road, Irving, Texas) (ROA. 1193);
- How the loss occurred (2.5-inch hail impacts);
- When the loss occurred (June 5, 2018) (ROA. 1194-1195);
- Where the loss occurred (the Property) (ROA. 1197-1198);
- The cause of the loss (severe hailstorm) (*Id.*);
- The extent of the damage (all three roof sections damaged and requiring replacement) (*Id.*);
- Supporting meteorological data from two independent databases (ROA. 1193-1195);
- Physical evidence including magnified photographs of damage (ROA. 1228-1234 and ROA. 1254-1270); and
- A detailed analysis excluding other potential causes (ROA. 1196-1197).

This comprehensive report provided Depositors with far more information than is typically required to constitute "notice" under an insurance policy. Depositors does not dispute that it received the report or that the report clearly identified the June 5, 2018 loss.

The District Court concluded that providing Treider's report "is not itself a claim under the 2018 Policy." (ROA. 2158). But this conclusion conflates two distinct concepts: (1) providing notice of a loss, which is what the policy requires, and (2) administrative procedures for how an insurer chooses to organize its claim files, which is not dictated by the policy.

Texas law "places the burden of establishing coverage upon the insured." *Century Sur. Co. v. Hardscape Constr. Specialties, Inc.*, 578 F.3d 262, 265 (5th Cir. 2009). But once the insured provides notice of a loss falling within the policy period, the insurer's obligation to investigate and adjust the claim is triggered. There is no requirement that the insured demand that the insurer create a new claim file with a new claim number. The question is simply whether the insurer received adequate notice of the loss.

Here, Depositors unquestionably received comprehensive notice of the June 5, 2018 loss. The fact that Depositors chose to continue investigating this loss under the same claim number it had previously assigned (which assigned a date of loss where no storm even occurred), rather than opening a new claim file, cannot be held

against Appellants. Depositors never told Appellants that a new claim needed to be filed; to the contrary, Depositors continued adjusting the loss, conducting additional inspections, and issuing coverage decisions regarding the June 2018 loss—all under the existing claim number.

### D. Depositors Acknowledged, Investigated, and Issued Multiple Coverage Decisions Regarding the June 2018 Loss Under the 2018 Policy

After receiving Treider's report on October 11, 2023, Depositors:

1. **Retained its engineer to prepare a supplemental report** specifically responding to Treider's analysis and conclusions regarding the June 2018 loss. (ROA. 549).
2. **Issued a coverage decision letter on February 26, 2024**, acknowledging the June 5, 2018 loss date and denying coverage on the ground that "the newly-claimed June 5, 2018 loss date occurred **outside of the effective policy period (January 29, 2022 to January 29, 2023) associated with the reported date of loss for this claim**, August 9, 2022." (ROA. 549-550) (emphasis added). This letter demonstrates that Depositors understood Appellants were seeking coverage for a June 2018 loss and that such loss would fall under the 2018 Policy, not the 2022 Policy.
3. **Conducted a third inspection** after receiving a demand letter from Appellants' counsel. (ROA. 550).
4. **Issued a final coverage decision on June 18, 2024**, again acknowledging the June 2018 loss and denying coverage on the same ground: the loss fell outside the 2022 Policy period. (ROA. 551).
5. **In litigation, attached the 2018 Policy** and argued that the June 2018 loss fell under that policy. (ROA. 549 and 585).

All of these actions demonstrate that Depositors understood Appellants were seeking coverage for a June 5, 2018 loss and that such coverage, if it existed, would be under the 2018 Policy. Depositors investigated that loss, evaluated that loss, and issued coverage decisions regarding that loss.

The District Court's conclusion that "no claim was made under the 2018 Policy" (ROA. 2156) is belied by Depositors' own conduct. Depositors acknowledged the June 2018 loss, investigated it extensively, and issued multiple coverage decisions regarding it. The fact that Depositors ultimately denied coverage—on the ground that the loss fell outside the 2022 Policy period—does not mean no claim was made. It means Depositors denied the claim.

Indeed, Depositors' coverage decision letters demonstrate that it understood Appellants were making a claim for the June 2018 loss but was denying that claim on coverage grounds, not on procedural grounds related to how the claim was reported.

For all of these reasons, the District Court erred in finding that no claim was made under the 2018 Policy. This ground for summary judgment should be reversed.

## II. THE DISTRICT COURT ERRED IN FINDING APPELLANTS FAILED TO PROVIDE PROMPT NOTICE AND THAT DEPOSITORS WAS PREJUDICED

Even if this Court were to find that Appellants' claim for breach of the 2018 Policy was not properly pleaded or tried by consent (which Appellants contend it was), the District Court committed reversible error in holding that Appellants failed to provide prompt notice of the June 2018 loss and that Depositors was prejudiced as a matter of law.

### A. Appellants Provided a Reasonable Excuse for the Delay: An 88-Year-Old Property Owner Unable to Access the Roof

Texas law requires "prompt notice," which courts define as notice "given within a reasonable time after the occurrence." *Ridglea Est. Condo. Ass'n v. Lexington Ins. Co.*, 415 F.3d 474, 479 (5th Cir. 2005)(rev'd on other grounds). "Whether notice is 'prompt' is generally a question of fact," but "if the facts are undisputed Texas courts may deem late notice unreasonable[.]" *Sadovsky v. Nationwide Prop. & Cas. Ins. Co.*, No. SA-18-CV-271-XR, 2019 WL 2165805, at *3 (W.D. Tex. May 15, 2019). "This principle 'is especially true where the delay is totally unexplained and without excuse.'" *Id.* (emphasis added).

Here, Appellants provided a reasonable excuse for the delay in discovering the damage: **Mr. Gann is 88 years old and unable to access the Property's roof**. (ROA. 1726). Mr. Gann could not observe the exterior damage to the roof because he could not physically climb onto the roof to inspect it.

The damage became apparent to Mr. Gann only when he observed interior water damage in 2022, indicating that the roof's waterproofing had been compromised. **Promptly upon discovering this interior damage, Mr. Gann reported a claim to Depositors on September 7, 2022.** (ROA. 1726).

Mr. Gann's age and physical inability to access the roof constitute a reasonable excuse for the delay in discovering the damage. This is particularly true for roof damage caused by hail, which often is not visible from the ground and may

not manifest as interior damage until years after the initial impact, depending on the roof's construction and the nature of the damage.

Mr. Gann's age was always a relevant fact bearing on whether the delay in discovering the damage was reasonable, and Appellants were not required to present evidence regarding Mr. Gann's age until Depositors raised the prompt notice issue—which it did not do until its Motion for Summary Judgment.

Appellants are not arguing that age alone excuses a failure to report; rather, Appellants are arguing that an 88-year-old property owner's inability to access a roof to observe damage, combined with the fact that the damage was not visible from the ground and did not manifest as interior damage until years later, constitutes a reasonable excuse for the delay in **discovering** the damage.

The question under Texas law is not whether notice was given within a certain number of years after the occurrence; the question is whether notice was given "within a reasonable time after the occurrence" under the specific circumstances of the case. *Ridglea*, 415 F.3d at 479. Where an insured provides a reasonable excuse for not discovering damage sooner, and promptly reports a claim upon discovering the damage, the notice is prompt as a matter of law—or at minimum, whether the notice was prompt presents a genuine dispute of material fact precluding summary judgment.

Here, at minimum, a genuine dispute of material fact exists regarding whether Mr. Gann's delay in discovering the roof damage was reasonable under the circumstances. The District Court erred in resolving this fact question against Appellants at the summary judgment stage.

**B. Depositors Failed to Establish Actual Prejudice as a Matter of Law**

Even assuming arguendo that the delay in providing notice was unreasonable (which Appellants contend it was not), under Texas law, an insurer must also establish prejudice in order to be relieved of its obligations under a policy based on late notice. *Hamilton Props. v. Am. Ins. Co.*, 643 F. App'x 437, 440 (5th Cir. 2016). "Prejudice can arise when the failure to timely notify results in the insurer's inability to investigate the circumstances of an occurrence to prepare adequately to adjust or defend any claims." *Id.* at 440-41 (quotation omitted). However, an insurer must establish **actual prejudice**, not merely speculative prejudice based on the passage of time. *Camacho v. Allstate Tex. Lloyds,* No. 7:14-CV-581, 2015 U.S. Dist. LEXIS 181362, at *6 (S.D. Tex. 2015).

The District Court found that Depositors was prejudiced as a matter of law based on three factors: (1) the years-long delay in reporting; (2) "multiple hailstorms [that] had occurred in the area of the Property" after June 2018; and (3) "normal course of deterioration." (ROA. 2161-2163).

This finding was erroneous for multiple independent reasons.

1. Alleged Intervening Storms Were Miles Away and Never Shown to Strike the Property

Depositors' prejudice argument rests entirely on the assertion that "numerous intervening hailstorms" had occurred in the area of the Property after June 2018, such that Depositors could not determine whether the damage was caused by the June 2018 storm or by one of these later storms. (ROA. 559). However, Depositors never established that any of these alleged "intervening storms" actually struck the Property.

The alleged intervening storms cited by Depositors and credited by the District Court were:

- **April 19, 2020**: A storm located **3.4 miles** from the Property. (ROA. 562).
- **November 11, 2021**: A 1" hailstorm that is not contained in the CoreLogic report and which Defendant's own expert did not even mention. (ROA. 562, 793, and 1324-1325).
- **March 16, 2023**: A storm located **1.25 miles** from the Property. (ROA. 562).
- **April 21, 2023**: A storm located **1.5 miles** from the Property. (ROA. 562).

Under Texas law, an insurer asserting prejudice based on alleged intervening events must do more than simply identify events that occurred in the general vicinity; the insurer must establish that those events actually affected the property at issue and caused (or could have caused) the damage claimed. *See H5R, LLC v. Scottsdale Ins. Co.*, No. 3:23-cv-1197-K-BN, 2025 U.S. Dist. LEXIS 56377, at *18 (N.D. Tex. 2025) (holding that there must be a "link" alleged intervening events to actual damage at the property).

Here, Depositors provided no evidence that any of these storms actually struck the Property. The fact that hail fell 1.25 miles, 1.5 miles, 3.4 miles, or 5 miles from the Property does not establish that hail fell **at** the Property. Hailstorms are highly localized events; hail can fall at one location and not at a location a mile away.

Depositors' engineers never conducted any analysis to determine whether these storms actually affected the Property. They simply noted that storms occurred in the general area and then speculated that the Property "could have" been affected. This speculation is insufficient to establish prejudice as a matter of law.

Indeed, Appellants' expert Gary Treider specifically analyzed these same potential storms and concluded that **none of them produced damage at the Property**. (ROA 1711-1714). Treider testified:

> While he acknowledged the possibility that other storms may have impacted the property, his opinion was that those storms were not severe enough to cause damage, and that only the June 5, 2018 storm caused the damage necessitated the replacement of the three roofs…. (ROA. 1892-1893).

Treider's analysis is based on:

- The characteristics of the damage observed at the Property (size, directional patterns, jagged nature) (ROA. 1712 and ROA. 1870, 57:12-20, ROA. 1871 59:4-60:17, ROA. 1880, 97:1-18, ROA. 1882, 102:20-22, ROA. 1882, 103:3-18);
- The characteristics of hail produced by each potential storm (size, direction) (*Id.*); and
- The absence of any damage characteristics consistent with the smaller hail produced by the alleged intervening storms. (*Id.*).

Depositors did not present any competing expert analysis establishing that any of the alleged intervening storms actually struck the Property or caused any of the observed damage. Depositors simply pointed to the general occurrence of storms in the area and asked the District Court to infer prejudice. This is legally insufficient.

2. Two of the Four Alleged "Intervening" Storms Occurred After the Claim Was Already Pending

Even more fundamentally, **two of the four alleged "intervening storms" occurred after Appellants had already reported the claim and Depositors had begun its investigation**:

- **March 16, 2023**: This storm occurred **six months after the claim was reported** on September 7, 2022. (ROA. 548 and 557).
- **April 21, 2023**: This storm occurred **seven months after the claim was reported**. (*Id*.).

By definition, these storms cannot have prejudiced Depositors' ability to investigate a claim that Depositors was already investigating when these storms occurred. Depositors had already:

- Conducted an initial inspection on September 16, 2022;
- Issued an initial payment on September 29, 2022;
- Retained a public adjuster who inspected the property in February 2023;
- Retained engineer Leif Lindblom who inspected the property in June 2023; and
- Issued a supplemental payment in August 2023.

All of these investigative activities occurred **before** the March and April 2023 storms. Thus, Depositors cannot credibly claim that these later storms prejudiced its investigation of the initial claim.

Appellants are unable to locate any Texas case in which a court found an insurer was prejudiced based on events that occurred after the insurer had already been notified of the claim and was actively investigating it. The District Court's reliance on these post-claim storms as evidence of prejudice was error.

3. Depositors' Engineers Never Linked Any Alleged Intervening Storm to Actual Damage

Throughout its investigation, Depositors retained three different engineers to inspect the Property:

- **Seek Now** (September 2022): Found damage to metal accessories and spray-foam roofs; found "no damage" to the built-up gravel roof; cause of damage to spray-foam roofs was "unknown." (ROA. 547).
- **Leif Lindblom, P.E.** (June 2023): Noted that various storms had occurred in the area but did not attribute any specific damage to any specific storm. (ROA. 548 and ROA. 793).
- **Armando Selva, P.E.** (June 2024): Concluded there was "no damage" to the built-up roof (directly contradicting Treider's photographic evidence) and that the foam roofs could be repaired by scarifying and recoating—the same repair Depositors had originally estimated. (ROA. 550).

Critically, **none of Depositors' engineers ever identified any damage at the Property that was caused by any of the alleged "intervening storms."** Depositors' engineers never stated that any specific damage feature was attributable

to the April 2020 storm, or the November 2021 storm, or the March 2023 storm, or the April 2023 storm.

In contrast, Appellants' expert Treider conducted a comprehensive analysis and concluded that all of the damage requiring roof replacement was caused by the June 5, 2018 storm producing 2.5-inch hail. (ROA. 1711-1714). **Treider specifically excluded the alleged intervening storms based on their hail characteristics, lack of matching damage patterns, and other factors. (*Id.*).**

Where the insured presents expert testimony that all relevant damage was caused by a single covered event, and the insurer presents no competing expert testimony attributing any damage to any other event, the insurer has not carried its burden of establishing prejudice based on alleged intervening events.

4. No Evidence of Any Storm with Hail Characteristics Matching the Observed Damage Other Than June 5, 2018

The alleged intervening storms cited by Depositors all produced **1-inch hail or less**. (ROA. 1713). **In contrast, the damage observed at the Property was consistent with 2.5-inch hail. (ROA. 1713)**.

One-inch hail and 2.5-inch hail produce distinctly different damage patterns. The energy of a hail impact increases exponentially with hail size; 2.5-inch hail carries far more kinetic energy and causes far more severe damage than 1-inch hail. Treider's report and deposition testimony establish that the damage observed at the Property—including the crushed asphalt membrane beneath the gravel ballast, the

severity and depth of impacts on the spray-foam roofs, and the cumulative nature of the damage—is consistent only with large hail of approximately 2.5 inches in diameter. (ROA. 1713 and ROA. 1870, 57:12-20; ROA. 1871 59:4-60:17; ROA. 1880, 97:1-18; ROA. 1882, 102:20-22; ROA. 1882, 103:3-18).

Of all the storms Depositors identified, only the June 5, 2018 storm produced hail of this size at or near the Property. (ROA. 1713).

Depositors presented no evidence that any other storm produced hail large enough to cause the damage observed at the Property. This alone refutes any claim of prejudice based on alleged difficulty in determining causation.

### C. Depositors Waived Any Prejudice Defense by Failing to Plead It as an Affirmative Defense

Under Federal Rule of Civil Procedure 8(c), a defendant asserting an affirmative defense must plead that defense in a responsive pleading. Affirmative defenses not pleaded are generally deemed waived. *See Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).

Here, Depositors filed an Original Answer on August 23, 2024 and an Amended Answer on December 4, 2024 (ROA. 30 and ROA. 142). **In neither pleading did Depositors assert that it was prejudiced by late notice as an affirmative defense.**

Depositors' Amended Answer asserted "Failure of Condition Precedent" as an affirmative defense and alleged:

> Plaintiffs failed to provide prompt notice of loss because the date of loss claimed by Plaintiffs' consultant Gary Treider is June 5, 2018 and first notice of the loss was provided on September 7, 2022. (ROA. 142).

However, this affirmative defense asserted only that notice was not prompt; it did not assert that Depositors was prejudiced. Under Texas law, an insurer asserting a prompt notice defense must establish **both** that notice was not prompt **and** that the insurer was prejudiced. *Hamilton Props.*, 643 F. App'x at 440. Failure to plead prejudice waives that element of the defense.

While prejudice is not in and of itself an affirmative defense, but rather something insurers must establish to prevail on a prompt notice condition precedent defense—which Depositors did plead—this reasoning conflates the ultimate legal test with the requirement to plead all factual bases for a defense.

If prejudice is an essential element that an insurer must prove to prevail on a prompt notice defense, then under the "fair notice" standard governing affirmative defenses, the insurer must plead facts giving fair notice that it will assert prejudice. *See Woodfield*, 193 F.3d at 362. Depositors' Amended Answer alleged that notice was not prompt but contained no allegation that Depositors was prejudiced—no allegation of intervening storms, no allegation of inability to investigate, no allegation of any harm resulting from the delay.

Moreover, even if the affirmative defense was technically sufficient (which Appellants contend it was not), the fact remains that Depositors never asserted

prejudice until its Motion for Summary Judgment—over two years after the claim was reported and over 20 months after Depositors began investigating the June 2018 loss date. This alone suggests that Depositors was not actually prejudiced and that the prejudice argument is a post-hoc litigation strategy rather than a genuine claim of harm.

### D. Depositors Waived Any Prejudice Defense by Never Asserting It During Claim Handling

Throughout the 22-month claim handling process—from September 7, 2022, when the claim was reported, through June 18, 2024, when Depositors issued its final denial—**Depositors never once asserted that it was prejudiced by the timing of any notification**.

Specifically, Depositors never:

- Issued a reservation of rights letter stating that it was investigating the claim but reserving the right to deny coverage based on late notice or prejudice;
- Stated in any correspondence with Appellants or their representatives that notice was not prompt;
- Stated in any correspondence that Depositors was prejudiced by the timing of when information was provided;
- Denied the claim based on late notice or prejudice; or
- Suggested in any way that coverage might be affected by issues related to notice or prejudice.

To the contrary, Depositors:

- Promptly inspected the Property upon receiving notice;
- Issued initial payment within 16 business days;
- Continued investigating the claim for over a year;

- Conducted multiple additional inspections;
- Issued supplemental payments;
- Received Treider's report identifying the June 2018 loss date and continued investigating that loss date; and
- Issued multiple coverage decision letters denying coverage on substantive coverage grounds (the loss fell outside the 2022 Policy period), not on procedural grounds related to notice or prejudice.

Depositors' conduct throughout the claim handling process demonstrates that it did not believe it was prejudiced by the timing of any notifications. Depositors continued investigating, continued adjusting, and ultimately denied coverage on substantive grounds. Only after Appellants filed suit did Depositors raise—for the first time—the argument that it was prejudiced by late notice.

This Court should hold that Depositors waived any prejudice defense by failing to assert it during the claim handling process.

**Summary on Prompt Notice and Prejudice**

For all of these reasons, the District Court erred in finding that Appellants failed to provide prompt notice and that Depositors was prejudiced as a matter of law. At minimum, genuine disputes of material fact exist on these issues, precluding summary judgment.

## III. THE DISTRICT COURT ERRED IN DISMISSING APPELLANTS' EXTRA-CONTRACTUAL CLAIMS

The District Court dismissed Appellants' claims for bad faith and violations of the Texas Insurance Code, holding that these claims failed because (1) Appellants

did not establish a breach of contract, and (2) Appellants did not provide evidence of an independent injury. (ROA. 2150).

This ruling was erroneous because genuine disputes of material fact exist regarding Depositors' investigation and handling of the claim, and because Appellants did allege an independent injury.

**A. Genuine Disputes of Material Fact Exist as to Depositors' Bad Faith**

Under Texas law, "an insurer has a duty to deal fairly and in good faith with an insured in processing claims." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997). An insurer acts in bad faith when it refuses to pay a claim without conducting a reasonable investigation or when it denies a claim based on reasons that are not supported by the investigation. *Id.*

"If nothing is presented suggesting that the evidence upon which the insurer relied was obtained in an unobjective or unfair manner and if that evidence, viewed in isolation, reasonably suggests that the insured's claim is invalid or questionable, the insurer's basis is reasonable as a matter of law." *Higginbotham*, 103 F.3d at 459. However, if the insurer fails to adequately investigate critical evidence or ignores evidence supporting the claim, a fact question exists regarding bad faith.

Here, genuine disputes of material fact exist regarding whether Depositors adequately investigated Appellants' claim.

**B. Depositors' Engineers Failed to Address Critical Evidence**

Appellants' expert Gary Treider provided comprehensive photographic evidence showing that the asphalt membrane beneath the gravel ballast on the built-up roof had been crushed by hail impacts. (ROA. 1790). Treider's report included magnified photographs clearly depicting this damage. Mr. Treider took samples from the roof in three different areas and he put them under magnification, which showed the asphalt under the gravel ballast on the built up roof had been crushed. (ROA. 1788-1793).

This evidence was critical because Depositors' initial inspection by Seek Now had found "no damage" to the built-up gravel roof. (ROA. 547). Treider's photographic evidence directly contradicted this finding and established that the built-up roof had indeed been damaged by hail.

**Despite the significance of this evidence, none of Depositors' subsequent engineers addressed it.** Neither Lindblom's supplemental report nor Selva's report analyzed the magnified photographs showing crushed asphalt. Neither engineer explained why Treider's physical evidence was not credible or provided an alternative explanation for the crushed asphalt beneath the gravel.

Instead, Depositors' engineers simply repeated the original finding that there was "no damage" to the built-up gravel roof, without grappling with the photographic evidence showing otherwise.

This failure to address critical evidence raises a genuine issue of material fact regarding whether Depositors conducted a reasonable investigation. A reasonable investigation would include analyzing all material evidence presented by the insured, particularly photographic evidence of physical damage. An insurer that ignores or fails to address such evidence may be found to have acted in bad faith.

**C. Appellants Alleged an Independent Injury**

The District Court held that Appellants' extra-contractual claims failed in part because Appellants did not allege an independent injury. (ROA. 2150). This finding was erroneous.

In their Original Petition, Appellants alleged:

> The damages caused by the storm have not been properly addressed or repaired in the months since the Storm, causing **further damages to the Property**, and causing undue hardship and burden to Plaintiffs. (ROA. 27) (emphasis added).

This allegation clearly identifies an independent injury: **further property damage resulting from the delay in making proper repairs**. Under Texas law, if an insurer's improper denial of a claim results in additional damage to the property that would not have occurred had the claim been properly paid and repairs timely made, this constitutes an independent injury. *Vernon v. State Farm Lloyds, No. 3:23-cv-02142-E; 2025 U.S. Dist. LEXIS 258765 (October 29, 2025).*

The District Court stated that "Plaintiffs cite to no evidence in the record to support any claim for damages independent from those covered by the claim."

(ROA. 2164-2165). However, at the summary judgment stage, the question is not whether the plaintiff has presented evidence proving damages, but whether the plaintiff has alleged a cognizable independent injury. Appellants did allege such an injury.

Moreover, Appellants were not required to present detailed proof of damages at the summary judgment stage when Depositors' own Motion for Summary Judgment did not specifically challenge the independent injury allegation. Depositors' briefing focused primarily on arguing that no breach of contract occurred; it did not argue that Appellants' allegation of further property damage was factually unsupported or insufficient as a matter of law.

For these reasons, the District Court erred in dismissing Appellants' extra-contractual claims.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that this Court:

1. **Reverse** the District Court's Memorandum Opinion and Order granting summary judgment to Depositors;
2. **Reverse** the District Court's Order denying Appellants' Rule 59(e) Motion to Alter or Amend the Judgment;
3. **Remand** this case to the District Court for trial on all claims; and
4. Grant such other and further relief as this Court deems just and proper.

**Respectfully submitted,**

By: */s/ Andrew A. Woellner*
Andrew A. Woellner
Texas Bar No. 24060850
**WOELLNER LAW GROUP, PLLC**
1717 W. 34th, Suite 600-186
Houston, Texas 77018
Telephone: (832) 982-0100
Facsimile: (832) 363-6333
Email: andrew@woellnerlaw.com

*Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Appellant's Brief was served on all counsel of record via the Court's CM/ECF system on this 24th day of March, 2026.

**Patrick M. Kemp**
**Robert G. Wall**
Segal McCambridge Singer and Mahoney
100 Congress Avenue, Suite 800
Austin, Texas 78701
Email: pkemp@smsm.com; rwall@smsm.com

*Attorneys for Defendant-Appellee*

*/s/ Andrew A. Woellner*
Andrew A. Woellner

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,319 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Andrew A. Woellner*
Andrew A. Woellner

Dated: March 24, 2026